United States District Court
District of Massachusetts

```
_____
                                )
UNITED STATES OF AMERICA,       )
                                )
           v.                   )
                                )    Criminal No.
David L. Place,                 )    09-10152-NMG
                                )
           Defendant.           )
_____)
```

MEMORANDUM & ORDER

GORTON, J.

On May 13, 2009, David L. Place ("Place") was indicted on five counts of violating the Lacey Act (a series of amendments to the Endangered Species Act), 16 U.S.C. §§ 3372(a)(1), 3373(d) and 18 U.S.C. § 2, and two counts of conspiracy, in violation of 18 U.S.C. § 371, for purchasing and selling sperm whale teeth (or attempting to do the same) when he knew or should have known that the teeth had been possessed, transported and sold in violation of federal laws and treaties.  The defendant moves to dismiss Counts Two, Three and Four of the Indictment as barred by the statute of limitations.

I.   **Background**

     A.   **The Investigation**

On September 24, 2008, Catherine Pisaturo ("Attorney Pisaturo"), a senior trial attorney of the Environmental Crimes Section of the U.S. Department of Justice, sent Place a letter,

-1-

via FedEx overnight, informing him that he was the target of a Grand Jury investigation.  The letter included a request that Place sign a waiver of the statute of limitations for a period of 180 days, suggested that the defendant consult with an attorney, provided contact information for the Federal Defender's Office and requested that the defendant or his attorney sign the agreement.  Although the letter was apparently signed for by someone at the defendant's then known address, the defendant claims that he never received it and did not respond to it.

On February 3, 2009, Attorney Pisaturo sent a second "target letter" to the defendant via FedEx overnight.  The letter, which was signed for by the defendant, reiterated the information in the first letter and offered another waiver agreement to toll the statute of limitations for 90 days.  On February 23, 2009, the defendant acknowledged by letter his receipt of the February 3, 2009 letter, indicating that he was in the process of "trying to locate" a lawyer and that he would cooperate fully with the investigation.

On February 27, 2009, Attorney Pisaturo and Special Agent Troy Audyatis communicated with Place by telephone.  Attorney Pisaturo informed Place that a Grand Jury investigation was proceeding, that time was of the essence and that Place could contact the Federal Defender's Office if he could not afford an attorney.  The defendant alleges that Attorney Pisaturo told him

he would be "in trouble" if he did not sign the waiver agreement. Attorney Pisaturo responds that she merely told the defendant that he could not obtain the benefits contained in the waiver unless he signed it.

On the same day as the telephone conversation, Place signed and faxed a Statute of Limitations Waiver and Tolling Agreement ("the Agreement") that purported to toll the statute of limitations for 90 days from the date of signing.  On March 3, 2009, Attorney Pisaturo sent Place a letter acknowledging receipt of the faxed Agreement, requesting the original and suggesting a meeting in late March or April 2009 to discuss the case.  A meeting was scheduled for March 31, 2009, but the defendant called the day before that date to postpone the meeting because he was trying to contact the Federal Defender's Office.  The Defendant did not contact Attorney Pisaturo after that and the meeting was never held.

### B.   The Indictment

Place was indicted on May 13, 2009 on seven counts, including several counts for violations of the Lacey Act which has a five-year statute of limitations.  Counts Two, Three and Four allege violations of the Lacey Act based on underlying conduct that occurred between February 28, 2004 and April 30, 2004.  The indictment was returned more than five years after the dates of the conduct alleged and would be barred by the statute

of limitations absent a valid waiver and tolling agreement.

On July 23, 2010, the defendant filed a motion to dismiss Counts Two, Three and Four of the Indictment as barred by the statute of limitations.  Place argues that the Agreement should not be enforced in that it was not his knowing and voluntary agreement because at the time he lacked counsel and was improperly pressured by the government.

## II.  __Analysis__

### A.  **Legal Standard**

An applicable statute of limitations is a waivable affirmative defense.  United States v. Spector, 55 F.3d 22, 24 (1st Cir. 1995).  An individual under investigation may expressly waive a statute of limitations defense by written agreement prior to indictment or trial, as long as the waiver is made "knowingly and voluntarily."  Id.

Few cases have addressed fully the meaning of a "knowing and voluntary" waiver in the context of the statute of limitations defense and whether advice of counsel is necessary to such a waiver.  The First Circuit has assumed that principles of contract law or estoppel may be useful sometimes in analyzing such a waiver.  Id. at 25 (analogizing application of contract law principles to plea bargains).[1]

---

[1] The government uses a "totality of the circumstances" approach in its brief, analogizing to the First Circuit's standard for a knowing and voluntary waiver in the Miranda context.

The Sixth Amendment right to counsel does not attach to a waiver of the statute of limitations that occurs prior to indictment.  United States v. Muto, No. 05CR344A, 2009 U.S. Dist. LEXIS 116474, at *23-24 (W.D.N.Y. Sept. 4, 2009); see also Brewer v. Williams, 430 U.S. 387, 398 (1977) (holding Sixth Amendment right to counsel attaches upon the initiation of formal judicial proceedings).  Although the target of an investigation does not have a Sixth Amendment right to counsel, it is clear that where he, in fact, is advised by counsel, a "deliberate and intentional waiver of the statute of limitations" is valid.  United States v. Sindona, 473 F. Supp. 764, 766 (S.D.N.Y. 1979).  The same may be true where the individual is himself a lawyer and has the benefit of his own knowledge of the law.  See United States v. Heidecke, 683 F. Supp. 1215, 1218 (N.D. Ill. 1988) (explaining waiver's clear language coupled with advice of counsel and defendant's own legal training "abundantly supports" finding knowing and voluntary waiver).

An individual has the right, however, to represent himself, regardless of his legal knowledge, and cannot be forced to accept the assistance of counsel, see Faretta v. California, 422 U.S. 806, 820 (1975), and such representation must be honored, even if the individual conducts "his own defense ultimately to his own detriment."  United States v. Manjarrez, 306 F.3d 1175, 1180 (1st Cir. 2002).  A target's decision not to seek the advice of

-5-

counsel, and in effect to represent himself, does not invalidate
an otherwise knowing and voluntary waiver. See Muto, 2009 U.S.
Dist. LEXIS at *23-24 (upholding waiver of statute of limitations
as knowing and voluntary even though defendant signed it without
advice of counsel). A waiver of the statute of limitations is
valid and uncoerced where the target is "repeatedly advised to
retain, or request, counsel." United States v. Helbling, 209
F.3d 226, 237 (3d Cir. 2000).

The "unequivocal language of the waiver" itself may refute
an argument that the waiver was invalid because it was not
knowing and voluntary. Heidecke, 683 F. Supp. at 1218.
Specifically, "unequivocal language" may include statements
indicating that the person is:

> a target of a Grand Jury investigation . . . [that] any
> defense founded upon the Statute of Limitations [is waived
> and that] no promises, representations or inducements of any
> kind other than those contained herein have been made.

Id. Clear language stating the consequences of the waiver also
supports finding a knowing and voluntary waiver. Id.

### B.   Application

Place contends that the Agreement is invalid because he was
not advised by counsel. Because Place signed the Agreement prior
to the bringing of any formal charges, no Sixth Amendment right
to counsel had attached. It is undisputed that at the time that
Place, who is not a lawyer, signed the Agreement, he was not
represented by counsel and did not receive advice of counsel.

It is clear, however, that Place had sufficient opportunity
to seek the advice of counsel but chose not to do so.  Two years
prior to his indictment, Place became aware that he might be
under investigation when a search warrant was executed at his
residence and business in March 2007.  During the five months
leading up to the Agreement, on at least three occasions (in two
letters and one phone call), Attorney Pisaturo suggested that
Place consult an attorney and gave him contact information for
the Federal Defender's Office in case he could not afford one.
Even assuming that Place did not receive the first letter, he was
still forewarned on at least two occasions prior to his signing
of the Agreement that he should seek the advice of counsel.
Place's decision not to do so, despite his later decision to
contact an attorney, does not invalidate an otherwise knowing and
voluntary waiver.  See Helbling, 209 F.3d at 237; Muto, 2009 U.S.
Dist. LEXIS at *23-24.

Any purported coercion in the form of time pressure is
unsupported by the record which demonstrates that Place had
sufficient opportunity to review the language of the Agreement.
He arguably had the first proposed agreement in his possession
for five months and definitely had the second proposed agreement
for three weeks prior to signing it.  Three weeks provided ample
opportunity to review a two-page, double-spaced, seven-paragraph
document.

Furthermore, the "unequivocal language of the waiver" itself refutes the argument that the waiver was not knowing and voluntary.  The Agreement, written in layman's terms, clearly indicates that: 1) Place was the target of an investigation, 2) applicable statutes of limitations "may bar prosecutions for conduct as of February 2009, or thereafter," 3) 90 days would be excluded for the purpose of determining the statute of limitations and 4) the right to raise defenses based on the statute of limitations was waived.  The Agreement concludes:

> DAVID PLACE has not been coerced, threatened, or promised
> anything other than the terms of this agreement, described
> above, in exchange for his waiver of the statute of
> limitations.  DAVID PLACE fully understands the consequences
> of signing this waiver and agrees to it.

Such clear and unequivocal language supports the finding of a knowing and voluntary waiver.  See Heidecke, 683 F. Supp. at 1218.

The defendant argues that the language of the Agreement is confusing when taken with the contents of the accompanying cover letter.  That letter, dated February 3, 2009, reads in relevant part:

> I am again advising you of this matter in an attempt to
> discuss a possible disposition short of trial, and to
> ascertain your amenability to cooperating with the
> government in other similar investigations.  Such
> cooperation would be taken into account in deciding whether
> charges ought to be filed in the first instance, and/or in
> formulating the appropriate charges and disposition.  My
> goal is to meet with your counsel (with you present if you
> so desire) prior to any charges being filed, so that I may
> disclose evidence gathered thus far, and so that we may

> begin discussions regarding proper disposition of this
> matter.  Such pre-indictment meetings are not uncommon, and
> are typically welcomed by defense counsel.

(original emphasis).  In the Agreement itself, the defendant

acknowledges that he has been advised that he is the target of an

investigation, which has not yet proceeded to a criminal

indictment and that the government desires to postpone that

decision.

Neither document offers a promise to avoid indictment, and

both indicate that indictment is not only possible but probable.

Even if an indictment is to be postponed, the gravamen of both

documents is that the government seeks a possible non-trial

disposition which is clearly distinguishable from a promise to

avoid indictment altogether.

The defendant further alleges that the waiver was coerced

because Attorney Pisaturo purportedly told him he would be "in

trouble" unless he signed it.  Attorney Pisaturo responds that

she merely told the defendant that he could not obtain the

benefits contained in the waiver unless he signed it, but even if

Attorney Pisaturo warned of "trouble," it was superfluous.  Cf.

Helbling, 209 F.3d at 237 n.6 (explaining district court's

finding that government's threat of immediate indictment unless

target signed waiver of statute of limitations was not coercion

by misrepresentation since the government was ready to indict

target at the time the waiver was signed).  Place already knew he

was in trouble after receiving the February 3, 2009 target letter and, in fact, had known of his impending plight since the search warrant was executed at his residence and business two years earlier.

Moreover, any such alleged coercion by phone does not overcome all of the other factors supporting a knowing and voluntary waiver, i.e. timely warnings to seek advice of counsel, the import conveyed by an authorized search long before, and three full weeks to review, with or without advice of counsel, a short and unequivocal agreement.  It is clear that the circumstances under which the defendant signed the Agreement do not constitute coercion, and that whatever his reason for signing, he did so knowingly and voluntarily.  See Muto, 2009 U.S. Dist. LEXIS at *24.


## ORDER

In accordance with the foregoing, the defendant's Motion to Dismiss Counts Two, Three and Four of the Indictment (Docket No. 45) is **DENIED**.


**So ordered.**

                              /s/ Nathaniel M. Gorton
                              Nathaniel M. Gorton
                              United States District Judge

Dated October 12, 2010

-10-